May it please the Court, I am Cynthia Lee, and I am representing Dennis Barnett in this case. I also want to acknowledge Heather Angoff, who was the author of the briefing in this case as well, who is present in court. She's a lawyer and admitted to practice? She is. Why don't you have her come to the table? She wrote the brief? She did. I ought to get some credit for that. She should, yes. Thank you. Your Honors, the district court in this case granted Respondent's motion to dismiss, without the benefit of the clarification that was articulated by this Court in Bills v. Clark. And as a result, the district court employed much the same reasoning as the magistrate judge and district court in Bills, interpreting the bare fact of repeated legal filings and the availability of jailhouse attorneys or inmate assistants during the limitations period as defeating any inference of impossibility in this case, any grounds for equitable tolling. And it was the same reasoning that in Bills did require remand for the district court to reconsider its assessment of the facts in light of this Court's clarification of the applicable standard. Now, the record in this particular case, however, is arguably stronger in support of equitable tolling, in that the issues that this Court found the record to be inadequate as to in Bills, the diligence of the Petitioner in seeking assistance, the availability of that assistance on reasonable terms sufficient to the Petitioner's needs, and lastly, the ability of the Petitioner to cooperate with or to monitor that assistance, I would submit that the record in this case is stronger in favor of equitable tolling than it may have been in the Bills case. We have a number of declarations in the excerpts of record from 1230 in Volume 4 to 13 or, I'm sorry, Volume 5 to 1313 from inmates who, although the government does characterize them as being inadmissible lay testimony, this is the testimony of precipient witnesses to Mr. Barnett's ability to function within the the within the context of tasks requiring writing of any kind, legal or otherwise. He did file something in State court while he was still within the one-year statute. He did. Asking the State, giving some of the individuals, and he did this on his own, right? Pro se? No, Your Honor. He did. He was pro se. He was not represented by counsel at the time, but I would disagree with the inference that he did this on his own. I think the evidence that we have establishes that he wasn't able to do much of anything in the way of writing on his own, and although it's clear that he did. He had help in the preparation of it? He certainly had help in the preparation of it. And what I'm saying is that he did this on his own. And that document indicated an awareness of the one-year statute, correct? Your Honor, it indicated an awareness of a need for timeliness. It also indicated, but I would submit that the record elsewhere does suggest that Mr. Barnett's ability to comprehend the nature of the deadline and whether a deadline had passed is at best equivocal. Didn't that filing ask a State court to toll the one-year statute? It did. I think the circumstances of that filing, both in terms of its being addressed both to the Solano County Superior Court, which had no role in the case which resulted in his commitment, and also to the Santa Clara County Superior Court, and no word at all about any communication with the Federal court, I think that speaks to the level of understanding of even the people who were assisting Mr. Barnett at that particular time. I'd also point out that in previous – there is a long history, as Respondents have noted, of litigation and submissions by Mr. Barnett. And in some of those he has, for example, in a 602 that was submitted as to his – the availability of library access, he cited a deadline of December 19th of 2000, where he believed that he had a deadline for a habeas filing as well. So I think that his understanding of the timeliness issue is a little bit all over the map. I'd also note that in those – within the four corners of the different documents that he is submitting to the various courts or to the CDC or as part of inmate appeals, there is a substantial record of his inability to comprehend what it is that he's submitting and what it is that he is in many instances mechanically transcribing. And this goes to what the bill's court was concerned about as far as the ability of a Petitioner to monitor whatever assistance might, in fact, be available to him. I'm sorry your opponent's not here, because I wanted to ask him this question, and you can comment on it if you wish. And that is that this very district court made a finding in connection with providing him with counsel that he was unable to develop any tolling or other arguments in response to the motion to dismiss. This was the State's motion. So apparently the district court concluded at the – pretty much at the start of the proceedings in district court that this – your client couldn't do this on his own. That's correct. And that was because of his then-extant mental capability. Is that correct? That is correct. And I think that the history of the litigation and the history of the district court's action in this regard, much like the history of the Respondent's own handling of Mr. Barnett's many efforts to obtain admission into their developmental disability program, demonstrates the extent to which Mr. Barnett was hampered by an inability to access assistance. It was not until 2008 when Mr. Barnett's brother, Michael Barnett, was transferred to the Vacaville facility, where he was in close proximity, finally, to his brother, the Petitioner. Are you prepared to prove, if the panel were inclined to remand, are you prepared to establish it's your burden that his mental incapacity existed during this entire period of time? Yes, I am, Your Honor. I believe that the record, even as it exists now, I think the record demonstrates – again, in the four corners of the different documents that he's submitting and the many different documents – his lack of ability to monitor the assistance that's provided by others. And his – the chronic and static nature of his developmental disability in particular. We have evidence from his very earliest school records, through his high school, through the 1982 CDC evaluation of Mr. Barnett, its own evaluation of Mr. Barnett, speaking to the nature of that disability and the profound handicap, is the expression that they use at one point with respect to verbal tasks and any sort of responsibility requiring much in the way of verbal communication. So there's that. There is also the records from the competency proceedings in the trial court, in the first instance, where we had three psychologists all opine that there is this confluence in Mr. Barnett's case of not just the mental illness, which admittedly can wax and wane, but of the developmental disability and the cognitive disabilities that depress his functioning across all – through all areas, not just in certain discrete segments of functioning. On the merits, the claim is what? On the merits, the claim is precisely this, the lack of competency. In an ineffectiveness? Ineffectiveness of counsel as to the litigation of that particular issue, simply because after Mr. Barnett had been deemed incompetent, had been committed to the custody of the Respondents, and had been reassessed when he was declining or objecting to a transfer to a different State hospital, it was at that point that Respondents decided that their measures to educate him about the propriety of the court system and the relevant players was, in fact, sufficient, and they returned him to court. At that point, the party simply submitted without further litigation or further evaluation. So just to be clear, I know that since this was pre-bills what the district court decided. I know a lot of decisions from this Court have reflected that it was done pre-bills, maybe send it back to the district court to do it under a bill's sort of outline and framework. But, you know, the Stanko case that came out in 2012, I think supports that if there's enough here, though, that we can see that what the district court did in the record would support a sort of a bill's application to what the findings are, then it not be sent back. So just to kind of summarize, your best argument is to send it back under just the simple it happened before bills, or you think there's still enough problems with the district court record here and the findings that would support sending it back? Your Honor, I think that remand is probably the simplest option in terms of, just as the Court has indicated, this was a pre-bills decision, and it appears clear that the district court followed the same logic as the district court and magistrate judge's recommendation in bills. That being said, as I have suggested earlier, I do think that the record here is more complete and specifically more complete in a way that supports equitable tolling in this case, precisely because it is clear from the inmate declarations and it's clear from the written submissions of Mr. Barnett himself that he was both pestering other inmates to the point of annoyance to obtain assistance, and that he was completely unable to comprehend the assistance that was being provided. You have, in his lengthier court filings, you have bits and pieces that are cobbled together, often in different handwriting. But even when it's in his own, there are these bizarre interjections that can only be accountable by way of his having mechanically copied certain things without comprehending what they were. I'll note in a letter, this is at page 59, volume 1 of the excerpts, letter dated September 15th of 2002, seeking transfer to California Men's Colony. It's addressed to Mr. Harbin Carlson, but it begins, Howdy, brother, I hope this letter finds you in good health and high spirits. As for myself, I'm doing fine here. We know that he was receiving a great deal of assistance from inmates for all purposes, including writing letters to his brother, and it appears here that he's not able to distinguish the salutation to his brother from the letter in which he's seeking a transfer to California Men's Colony. At page 1181, in the course of this March 14th of 2006 petition, in the course of a lengthy passage where he talks about the public defender's office, acting under color of law, he interjects, List by name and citation only any cases that you think are close factually to yours, to my, so that they are an example of the error you believe occurred in my or in yours case? Question mark, question mark, three exclamation points. And then C, type of writ, two-page and written down, too. But my question, I guess, and it's what we've been discussing here, but just pointedly, do the district courts, the finding regarding the 2004 State habeas application and then some of the filings you made between your client made between 2000 and 2002, aren't they enough, if we look back, to say that they fulfill the Bill's test? I would disagree with that. I think that it's clear that the court, the district court in this case, treated those as being essentially dispositive in this instance. But what is distinct from either the circumstance in Bill's or in Roberts, for example, is the fact that there is clear evidence of both the mental impairment as well as the developmental disability, and that although there is this prolific history of filing of written submissions by Mr. Barnett, it's clear that that both could not occur without substantial assistance from other inmates because of his incapacity to read and comprehend, and also that he was unable to cooperate with and monitor the assistance that he was receiving in a way that would allow him to avoid these many patent errors and oddities in the course of his filing. It does appear, for example, from the instances in which he, again, mechanically transcribes the words, hence, AEDPA's statute of limitations on two occasions, again, that someone may be cognizant of the existence of the statute. So as you're indicating, under either path, we send it, we would send it back, because it's pre-Bill's or even under Stankle, what the current record is doesn't support the Bill's. That's correct. All right. I just wanted to understand. Do you have anything else? Unless the Court has further questions. No. Thank you very much. Thank you. I appreciate your presentation here today, and I'm sorry it was under these circumstances, although maybe you're not so sorry that the other side didn't show up. I at least didn't have to worry about whether I was reserving time. Okay. Thank you very much. The case is now submitted.
judges: Schroeder, Hawkins, Murguia